NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD CHARLES RICHARDS | : | |
| | : | |
| Appellant | : | No. 1238 WDA 2018 |

Appeal from the PCRA Order Entered August 28, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000344-2013

BEFORE:   BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    FILED NOVEMBER 10, 2020

Appellant Ronald Charles Richards appeals from the order dismissing his petition challenging the application of Subchapter I[1] of the Sexual Offender Registration and Notification Act (SORNA) as an untimely Post Conviction Relief Act[2] (PCRA) petition.  Appellant claims that his petition is not subject to the PCRA and argues that the application of Subchapter I violates ex post facto and double jeopardy constitutional protections.  We affirm.

The background to this appeal is as follows.  On December 1, 2012, Appellant restrained the complainant in an abandoned building, sexually

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9799.51-9799.75 (eff. Feb. 21, 2018).

[2] 42 Pa.C.S. §§ 9541-9546.

assaulted her, and took her purse.  A criminal complaint was filed that same day.

On May 20, 2013, Appellant entered a negotiated guilty plea to aggravated indecent assault and indecent assault,[3] among other offenses. That same day, the trial court sentenced Appellant.  Pursuant to the plea agreement, the trial court imposed a term of five to twelve years' imprisonment.  The trial court also informed Appellant of the lifetime registration requirement under the former version of SORNA (SORNA I).[4] Appellant did not file a direct appeal.

On July 17, 2017, nearly four years after Appellant was sentenced, our Supreme Court decided Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017) (plurality).  The Muniz Court applied the framework established in Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963) to conclude that SORNA I was "punitive in effect."  Muniz, 164 A.3d at 1218.  Based on that analysis, the

_____

[3] 18 Pa.C.S. §§ 3125(a)(1) and 3126(a)(2), respectively.

[4] 42 Pa.C.S. §§ 9799.10-9799.41 (eff. 2012).  There is no indication that the trial court found Appellant to be a sexually violent predator.  Act 152, or Megan's Law III, see 2004, Nov. 24, P.L. 1243, No. 152, was in effect at the time Appellant committed the underlying offenses.  However, SORNA I had taken effect at the time of his plea, and by its terms, applied to Appellant. See 42 Pa.C.S. § 9799.13(1) (eff. 2012) (noting that SORNA I would apply to an individual who was convicted of a sexually violent offense on or after December 20, 2012, the effective date of SORNA I).  We note that on December 16, 2013, our Supreme Court held that Act 152 was unconstitutional for violating the single-subject rule.  Commonwealth v. Neiman, 84 A.3d 603, 616 (Pa. 2013).

High Court held that retroactive application of SORNA I constituted an ex post facto violation when applied to a defendant who committed a sexual offense before December 20, 2012, the effective date of SORNA I.  See id. at 1223; see also Commonwealth v. Lippincott, 208 A.3d 143, 150 (Pa. Super. 2019) (en banc).

In response to Muniz, the General Assembly amended SORNA I to include Acts 10 and 29 of 2018 (SORNA II).  See 2018, Feb. 21, P.L. 27, No. 10 (Act 10); see also 2018, June 12, P.L. 140, No. 29, (Act 29).  SORNA II divides sex offender registrants into two distinct subchapters – Subchapter H, which includes individuals who were convicted of a sexually violent offense that occurred on or after December 20, 2012, and Subchapter I, which includes individuals who were convicted of a sexually violent offense that occurred "on or after April 22, 1996, but before December 20, 2012," or who were required to register under a former sexual offender registration law on or after April 22, 1996, but before December 20, 2012, and whose registration requirements had not yet expired.  See 42 Pa.C.S. § 9799.11(c) and 42 Pa.C.S. § 9799.52, respectively.

In April 2018, Appellant filed a pro se motion challenging his registration requirements.  The trial court regarded the motion as Appellant's first PCRA petition and appointed counsel.  On June 12, 2018, Appellant's counsel filed an "Amended PCRA Petition and/or Petition for Writ of Habeas Corpus" (amended petition).  In his amended petition, Appellant claimed that he could "not be subjected to any registration requirements upon release."  Am. Pet.,

6/12/18, at 7 (unpaginated) (emphasis in original). Appellant asserted that the former versions of Megan's Law "no longer existed" and Subchapter I supplanted SORNA I for certain sex offense registrants. Id. According to Appellant, Subchapter I was punitive and violated federal and state ex post facto principles because it contained substantially similar registration and notification requirements as those found unconstitutional by Muniz in SORNA I. Id. at 13-17. Appellant emphasized that the Muniz Court found that a "defendant's 'fundamental right to reputation' under the Pennsylvania Constitution, and the fact that SORNA registration (particularly the Megan's Law website) affected that right, was critical to the Court's rulings that the Pennsylvania Constitution affords more ex post facto protections than the federal constitution[] in this context . . . ."[5] Id. at 29.

_____

[5] Specifically, Appellant quoted the following portion of the lead opinion in Muniz discussing how SORNA I violated the Pennsylvania constitution:

> To summarize, we find the following to be consequential to our analysis of the relative protections afforded by the state and federal ex post facto clauses: the right to be free from ex post facto laws is an 'inherent' and fundamental Article I right under the Pennsylvania Constitution; this Court has previously recognized . . . there is some divergence between the state and federal ex post facto clauses; SORNA[ I]'s registration and online publication provisions place a unique burden on the right to reputation, which is particularly protected in Pennsylvania; other states have also found the retroactivity of registration laws unconstitutional under their state constitutions, partly due to reputation concerns; and both the state and offender have an interest in the finality of sentencing that is undermined by the enactment of ever-more severe registration laws. For those reasons, we find Pennsylvania's ex post facto clause provides even

Appellant further claimed that the application of Subchapter I would violate federal and state double jeopardy principles. Id. at 21-25. Furthermore, he argued that Muniz nullified his registration requirements and that the enforcement of Subchapter I would impose a second punishment for the same criminal offense. Id. at 25.

Additionally, Appellant asserted that the PCRA court had jurisdiction to consider his petition under the PCRA. Appellant noted that he was "currently serving a sentence of imprisonment and is otherwise subject to a criminal punishment in the form of Subchapter I registration and reporting requirements as a result of [the trial court's] sentence." Id. at 4. Appellant further asserted that Muniz recognized a new constitutional right that was held to apply retroactively and that he filed his pro se petition within sixty days of the creation of Subchapter I. Id. Alternatively, Appellant argued that the PCRA court had jurisdiction to grant relief under a trial court's habeas

_____

greater protections than its federal counterpart, and as we have concluded SORNA's registration provisions violate the federal clause, we hold they are also unconstitutional under the state clause.

Am. Pet., 6/12/18, at 78 (quoting Muniz, 164 A.3d at 1223). We note that the passage quoted by Appellant was authored by Justice Dougherty in the lead opinion joined by Justices Baer and Donohue. However, Justice Wecht, joined by Justice Todd, filed a concurring opinion agreeing that SORNA I was unconstitutional under the Pennsylvania constitution, but disagreeing that the Pennsylvania constitution provided greater protections than the federal constitution. Muniz, 164 A.3d at 1224 (Wecht, J. concurring).

corpus powers or the court's inherent authority to correct an illegal sentence or a patent error. Id.

On August 3, 2018, the PCRA court issued a notice of its intent to dismiss Appellant's PCRA petition as untimely. See Pa.R.Crim.P. 907(1). Appellant did not respond. On August 28, 2018, the PCRA court dismissed the petition.

Appellant timely appealed and contemporaneously filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The PCRA court filed an opinion concluding that Appellant's amended petition constituted an untimely PCRA petition. PCRA Ct. Op., 11/27/18, at 4.

Of relevance to this appeal, we briefly note that on July 21, 2020, our Supreme Court issued its decision in Commonwealth v. Lacombe, 234 A.3d 602 (Pa. 2020). The Lacombe Court rejected the Commonwealth's argument that the trial court lacked jurisdiction to consider challenges to sex offender registration requirements outside the confines of the PCRA. Id. at 617-18. Further, the Lacombe Court noted that Subchapter I was "markedly different from the version of SORNA invalidated in Muniz." Id. at 606. Accordingly, the Lacombe Court applied the same Mendoza-Martinez framework employed by the Court in Muniz, ultimately concluding that "Subchapter I is nonpunitive and does not violate the constitutional prohibition against ex post facto laws." Id. at 605-06.

Additionally, we note that our Supreme Court recently vacated this Court's decision in Moore, in which we held that 42 Pa.C.S. § 9799.63, the internet notification provision of Subchapter I, violated the federal ex post

facto clause, but was severable from the remainder of Subchapter I. Commonwealth v. Moore, 222 A.3d 16 (Pa. Super. 2019), vacated, 42 WAL 2020 (Pa. filed Oct. 6, 2020) (per curiam order) (vacating and remanding in light of Lacombe).

Appellant presents the following issues for review:

1. Whether the [PCRA] court erred in ruling that it lacked jurisdic[ti]on to adjudicate the merits of the [amended petition]?

2. Whether the [PCRA] court erred by not ruling that Subchapter I . . . is unconstitutional under the federal and state ex post facto and double jeopardy clauses?

Appellant's Brief at 5 (full capitalization omitted).

In his first issue, Appellant contends that the trial court erred in dismissing his amended petition as an untimely PCRA petition. Appellant contends that trial courts "clearly have jurisdiction to hear and decide the merits of challenges to the retroactive application of sex offender registration statutes." Id. at 10. The Commonwealth, referring to several of this Court's previous decisions, responds that the trial court properly concluded Appellant's petition was an untimely PCRA petition. See Commonwealth's Brief at 21-22; Intervenors' Brief at 43-44.[6]

The threshold issue of whether a petitioner must raise a claim for post-conviction relief under the PCRA raises a question of law. See

---

[6] The Office of the Attorney General and the Pennsylvania State Police have also submitted an intervenors' brief.

Commonwealth v. Descardes, 136 A.3d 493, 497 (Pa. 2016). Our standard of review is de novo, and our scope of review is plenary. Id. at 496-97.

As discussed previously, in Lacombe, our Supreme Court explicitly rejected the proposition that claims involving the application of sexual offender registration requirements must be raised in a timely PCRA petition. See Lacombe, 234 A.3d at 617-18. Initially, the Lacombe Court explained that it had previously considered challenges to the sexual offender registration statutes that were raised in filings outside of the PCRA. Id. (citing, in part, Muniz, 164 A.3d at 1208; Commonwealth v. Martinez, 147 A.3d 517, 523 (Pa. 2016); A.S. v. Pa. State Police, 143 A.3d 896, 903 n.7 (Pa. 2016)).

Further, the Lacombe Court recognized that "frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final." Lacombe, 234 A.3d at 617. Further, under the PCRA, a petitioner could be ineligible for relief based on timeliness grounds or because their sentence has expired. Id. Therefore, the Lacombe Court concluded that the trial court had jurisdiction to consider Lacombe's petition for relief. Id. at 618. In so doing, our Supreme Court declined to find that "the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes." Id.

Here, in light of Lacombe, we agree with Appellant that the trial court had jurisdiction to consider his challenges to his sex offender registration

requirements. See id. at 618. Therefore, we are constrained to conclude that the trial court erred in treating Appellant's petition as an untimely PCRA petition.

In his remaining claim, Appellant argues that Subchapter I is "unconstitutional under the federal and state ex post facto and double jeopardy clauses." Appellant's Brief at 15. Appellant contends that "[t]he similarities between the SORNA [I] scheme of sexual offender registration and Subchapter I are remarkable , and the modest differences are not sufficiently meaningful to distinguish Subchapter I from SORNA [I] for purposes of ex post facto analysis." Id. at 17 (some formatting altered). As to his double jeopardy claims under United States and Pennsylvania Constitutions, Appellant asserts:

> The bottom line is that if this Honorable Court accepts the arguments that [Appellant's] reporting requirements were nullified (if only temporarily) by [Muniz] decisions, and that Subchapter I is, in its operation and effect, a criminal punishment or penalty, then it necessarily follows that Subchapter I effectuates a second punishment upon the defendant.

Id. at 37 (emphasis in original).

The Commonwealth responds, in relevant part, that Subchapter I is not punitive and, therefore, "does not violate either the Pennsylvania Constitution's or the United States' Constitution's Ex Post Facto Clauses." Commonwealth's Brief at 24 (some formatting altered). The Commonwealth continues that Appellant's "double jeopardy claim must [also] fail because he

is not being 'punished' twice for the same offense."  Id. at 67; see also Intervenors' Brief at 42-43.

Here, like in Lacombe, Appellant's Subchapter I claims are based on his underlying argument that like SORNA I, Subchapter I is punitive under the analysis set forth in Muniz.  In light of our Supreme Court's holding in Lacombe, we conclude Appellant is not entitled to relief.  Id.  Accordingly, we affirm.[7]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/10/2020

_____

[7] We note that recently, in Commonwealth v. Smith, --- A.3d ---, 1011 MDA 2019 (Pa. Super. filed Sept. 28, 2020) this Court declined to address an appellant's claims that "SORNA registration requirements violate his due process rights because he committed his crimes as a juvenile and because SORNA imposed an irrebuttable presumption of recidivism for juvenile offenders."  Smith, 1011 MDA 2019 at 2.  The Smith Court remanded the matter to the trial court for further proceedings.  Id. at 6.  However, under the circumstances of the instant case, and because Lacombe is dispositive of Appellant's arguments, we conclude that remand is unnecessary.